## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

---

**Timothy Connelly**
**David Winchell**

**On Behalf of Themselves and**
**All Others Sharing a Question of**
**Common Interest**

    **Plaintiffs**

    **v.**                                  **Case No. 15-CV-308**

**Dan Lepke Trucking LLC**
**Lepke Trucking & Excavating LLC**
**Daniel Lepke**

    **Defendants.**

---

## COMPLAINT

---

Plaintiffs, by their attorneys, for their Complaint against Defendants state as follows:

1.    This is a collective action under the Fair Labor Standards Act, and an individual and class action under Wisconsin law by Plaintiffs, current and former drivers of Dan Lepke Trucking LLC ("Lepke Trucking") and Lepke Trucking & Excavating LLC ("Lepke Excavating") to seek redress for the Defendants' failure to pay wages required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 et seq. and Chapter 109 of the Wisconsin statutes.  The claims arise from the Defendants' unlawful policy of failing to count the Plaintiffs' work time before their trucks are loaded for the first time on the day, and after their trucks are unloaded for the final time on the day; and for failing to pay to the Plaintiffs overtime pay required by law.  Plaintiffs are bringing an additional Wisconsin class action claim for the Defendant's uniform policy of deducting wages from the Plaintiffs for vehicular and property damage and/or fines,

without giving the employees an opportunity, prior to the making of the deduction, to establish that they were not at fault for the damage.  Plaintiff Connelly is bringing an additional individual claim under Wisconsin law for the Defendants' reduction of his contractually required wage rate.

## JURISDICTION AND VENUE

2.     This court has subject matter jurisdiction under 29 USC §216(b) and 28 U.S.C. §1331 because Plaintiff alleges violations of the FLSA, 29 U.S.C. §201 et seq.

3.     This Court has supplemental jurisdiction over the Plaintiff's claims brought under Wisconsin law pursuant to 28 U.S.C. §1367 because they are based upon the same nucleus of operative facts, and therefore form the same case or controversy as their FLSA claims.

4.     This Court has personal jurisdiction over each defendant because they each reside in Vernon County, Wisconsin within this district.  The vast majority of acts that give rise to the Plaintiffs' claims against the Defendants occurred in this judicial district.

5.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) & (c) because a substantial part of the events giving rise to the claims described herein occurred in this district and Defendants may be found within this district.

## THE PARTIES

6.     Plaintiffs are adult residents of the State of Wisconsin who were employed by Lepke Trucking and/or Lepke Excavating between 2012 and the present.  Upon information and belief, all plaintiffs reside within the Western District of Wisconsin.   Pursuant to the consent forms attached as exhibit 1 to this Complaint, each Named Plaintiff has consented to bring the Complaint's Fair Labor Standards Act claims against the Defendants.

7.     During the course of their employment with the Defendants, the Plaintiffs regularly delivered and dumped off materials required for the construction, maintenance, or

repair of highways and/or roadways directly connected to highways.  Since the highways and roadways are significant instrumentalities used by vehicles moving in interstate commerce, the Plaintiffs in practical effect were regularly engaged in the production of goods for interstate commerce during the course of their employment by the Defendants.

8.      Defendants Lepke Trucking and Lepke Excavating are limited liability corporations organized and existing under the laws of the State of Wisconsin.  Both LLCs share the same registered agent, and have the same principal place of business located at E3014 County Road OK in Chaseburg, Wisconsin.  Both entitles are employers within the meaning of Wis. Stat. §109.03(1).  Both entities are also enterprises engaged in the production of goods for commerce in that they are enterprises that frequently assisted in the construction, maintenance, and repair of highways and roadways, which are significant instrumentalities of interstate commerce.   At all relevant times, both entities have had annual gross volume of business at or above $500,000.

9.      Lepke Trucking and Lepke Excavating constitute a single employer in that they were both owned and managed by Dan and Ruth Lepke; that Dan and Ruth Lepke controlled the operations of both companies; and in that upon information and belief the LLCs shared trucks, customers, employees, telephone numbers, cash,  and other expenses of operation.  The trucks used by both entities have the name "Dan Lepke Trucking & Excavating" written on them. Plaintiffs worked for the two entitles on an interchangeable basis, without any observable distinctions between work assignments for Lepke Trucking and work assignments for Lepke Excavating.

10.     At all relevant times Dan Lepke was the owner and/or agent in charge of Lepke Trucking and Lepke Excavating.   Dan Lepke was directly responsible for setting the

compensation policies of Lepke Trucking and Lepke Excavating, determining hours worked and wage rates payable to drivers employed by Lepke Trucking and Lepke Excavating; and was ultimately responsible for the supervision of day to day work performed by drivers employed by Dan Lepke Trucking and Lepke Excavating.  Upon information and belief, Dan Lepke resides in this district at Chaseburg, Wisconsin.

## FACTS

11.     Plaintiffs' primary job responsibility consisted of operating vehicles owned by the Defendants to pick up materials, deliver said materials, and to perform other work at construction sites.  All of the vehicles operated by the Plaintiffs for the Defendants required commercial drivers' licenses to operate, and were substantially more difficult to drive and operate, when compared to smaller non-commercial vehicles.

12.     The Plaintiffs could not successfully complete their work tasks for the Defendants without the vehicles owned by the Defendants since those vehicles were the only ones available to them, which had the necessary power and carrying capacity to complete their work assignments.  The vehicles were thus the most important tool used by the Plaintiffs in their day to day work for the Defendants.

13.     Each morning the Plaintiffs would pick up their vehicles from a storage site located in Wisconsin, and then would drive their vehicles between pickup locations, jobsites, and dump off locations to perform their assigned job responsibilities.

14.     During the course of their employment with the Defendants, all of the Plaintiffs had work weeks during which they worked over 40 hours per week, and no drivers employed by the Defendants had a driving assignment requiring driving across state lines during either the

preceding four months, or the entirety of duration of the Plaintiffs' employment with the Defendants, whichever period is shorter.

15.     Upon information and belief, all of the stone, sand, and other construction materials that the Plaintiffs transported in trips that took place entirely within Wisconsin were originally removed from locations located within the State of Wisconsin.

16.     Once construction materials are delivered to storage locations, they were bought by owners and general contractors of construction projects, who may then hire the Defendants to deliver the construction materials from storage locations to the jobsite.

17.     The persons who ordered for the construction materials to be delivered to, and stored at the storage areas therefore did not have any intent with respect to the final destination of the construction materials.

18.     Upon information and belief, persons who order for construction materials to be delivered to, and stored at the storage areas do not base their orders on pre-existing orders from, or sales contracts with the customers served by the Defendants; and do not determine the amount of construction materials to order based upon the needs of customers served by the Defendants.

19.     At all relevant times between 2012 and the present, the Plaintiffs were required by the Defendants to store their vehicles at the yards for the respective companies that they worked for; and/or another storage location chosen by the Defendants.

20.     Each morning the plaintiffs were required to report to the location where the vehicles were stored to pick up their work assignments and vehicles.  There were also sometimes when the Plaintiffs were required to report to one location to receive work assignments, and then to go to a second location to pick up their vehicles. Plaintiffs usually did not have any way of

determining what their daily work assignments are, if they did not report to the shop in the morning, as required by the Defendants.

21.     Once the Plaintiffs received their work assignments, they would then have to build up the air pressure in their vehicles, perform a daily pre-trip inspection, and warm up their trucks, before they can drive the vehicles.    All such tasks performed by the Plaintiffs were required by law, and/or indispensable to the safe operation of the trucks.

22.     After the Plaintiffs' vehicles were ready to drive, they would then drive them to the first work location for the day.  In doing so, the Plaintiffs are delivering their vehicles, which are their most important tool for completing their work assignments, to the location where the vehicles can be used to complete work assignments.

23.     When the plaintiffs' first work location is a loading site, they often have to wait in line for their trucks to be loaded. Plaintiffs may arrive at the first loading site prior to the official loading time either they needed to follow another employee in order to know where they were going, and the other employee chose to arrive at the loading site early; or because they would have to wait longer to be loaded, if they waited until the official loading time to arrive at the loading site.

24.     After completing all of their work assignments for the day, then plaintiffs would drive their vehicles, the main tool required to perform their daily work responsibilities, back to the storage location.  Once the Plaintiffs arrived at the storage location, they would perform a post-trip inspection, fuel their trucks, and complete the paperwork required by the Defendants, before leaving for the day.

25.     As a uniform policy the Defendants have never paid, nor treated as hours worked, time spent by Plaintiffs performing the tasks described in paragraphs 20-24 of the Complaint.

26.     To the extent that some of the Defendants' customers permitted the Defendants to charge it for time spent on return trip from the dumping location to the pick-up location, even though no such trip would be undertaken by the Plaintiffs, any pay to the plaintiffs for the time charged to the return trip represent additional compensation for work performed for the Defendants' customers, rather than compensation for either the return trip from the last work location to the vehicle storage location, or work performed at the storage location.

27.     The Defendants told the Plaintiffs that they would receive overtime pay for working over 40 hours per week.  The Plaintiffs were then eligible for overtime pay for working over 40 hours per week, even during weeks when they either did, or could have received a work assignment to drive across state lines.  The Defendants thereby established a policy, which the Plaintiffs accepted by continuing to work for the Defendants, under which the Plaintiffs were eligible for overtime pay regardless of whether they did, or could have received driving assignments across state lines.

28.     The Defendants did not pay the Plaintiffs overtime pay for some of their hours worked over 40 hours during the workweek.

29.     Plaintiffs were sometimes involved in accidents that caused damage to vehicles and/or other property.  The Defendants sometimes made deductions from the Plaintiffs' wages for losses that resulted from the accidents without a written authorization from the Plaintiffs for the deduction, without a finding by the Plaintiffs' representative and the Defendants that the Plaintiffs were at fault for the accidents, and without a court finding that the Plaintiffs were at fault for the accidents.

30.     Even when the Plaintiffs did sign a written authorization for deductions from their paychecks for the accidents, the written authorizations did not address whether the Plaintiffs

were at fault for the accidents, and did not contain any admission by the Plaintiffs that they were at fault for the accidents.

31.     The written authorizations were obtained by the Defendants by threatening the Plaintiffs that they would be discharged unless they signed the authorizations, without giving the Plaintiffs any opportunity to demonstrate that the accidents were not the result of their negligence, carelessness, or willful and intentional misconduct.

32.     Defendants deducted more than $4,000 from Plaintiff Connelly for an accident that was not his fault by requiring him to sign an authorization for the deduction under threat of discharge, without giving Connelly any opportunity to demonstrate that he was not at fault for the accident.

33.     Even though Dan Lepke promised Plaintiff Connelly that he would receive $20 per hour for each and every hour of work that he performed for the Defendants thereafter, on some subsequent projects Connelly received only $12 or $15 per hour, rather than the $20 per hour promised by Dan Lepke.

34.     Defendants would change Connelly's pay rate on the checks issued to him, without any prior notice to Connelly that his pay would be cut.

35.     Since Defendants have never conditioned the continuance of Connelly's employment on his acceptance of the pay rate cuts, Connelly has never agreed to the pay cuts. Nor have Connelly received any other benefits in return for the pay cuts.

## COLLECTIVE ACTION ALLEGATIONS

36.     Named Plaintiffs bring their First Claim for Relief, pursuant to the Fair Labor Standards Act, on their own behalf and on behalf of all other similarly situated drivers employed by the Defendants who either (a) Did not have all of their work time before they were loaded for

the first time on the workday, or after they were unloaded for the final time on the workday counted as hours worked; or (b) was not paid any overtime pay for some of their hours worked over 40 hours per week, pursuant to Section 16(b) of FLSA, 29 U.S.C. §216(b).

37.     Named Plaintiffs are similarly situated to others in the FLSA Class and are subject to Defendants' common practice, policy, or plan of failing to count their hours described in paragraphs 20-24 of the complaint as hours worked, in calculating the amount of overtime pay that they were entitled to receive from the Defendants; by failing to pay to them the minimum wages required by law, once all of their hours worked are taken into account; and by failing to compensate time at time and a half their regular rate all of their hours worked over 40 hours during the workweek.

38.     Additionally, the Defendants did not give set routes or driving assignments to the Plaintiffs; but rather assigned work to the Plaintiffs on a day to day basis, so that the question of whether the Plaintiffs could be assigned an interstate driving route can be determined on a class wide basis.

39.     The First Claim for Relief for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 16(b) of FLSA, 29 U.S.C. §216(b), for prospective members of the FLSA Class that are similarly situated to the Named Plaintiffs and have claims that are similar to their First Claim for relief.

40.     Following the filing of this Second Amended Complaint, members of the FLSA Class may sign Consent to Sue forms, and agree to "opt in" as plaintiffs to this litigation.

41.     The claims of the Named Plaintiffs are representative of the claims of members of the FLSA Class in that such employees were hourly employees, worked for Defendant, and have been deprived of overtime pay by the Defendants.

42.     The names and addresses of the FLSA Class are available from Defendants, and notice should be provided to the FLSA Class via first class mail to their last known address as soon as possible.

## CLASS ALLEGATIONS

43.     Named Plaintiffs seek to represent a class of all drivers employed by the Defendants who was either subject to the Defendants' uniform policy of not paying their employees for hours worked before they begin performing their first work assignment for a customer on the day, or after they complete their final work assignment for a customer on the day; had deductions made from their wages for  damage to property caused by accidents that they were involved in without complying with Wis. Stat. §103.455, or did not receive overtime pay for hours worked over 40 during the workweek, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

44.     The persons in the class identified above are so numerous that joinder of all members is impracticable.  Upon information and belief, and taking into account the rate of turnover of drivers, it is believed that there are at least 30 drivers each who (a) during the last two years lost wages because of the Defendants' failure to count all of their hours worked; (b) during the last two years did not receive any overtime pay for their hours worked over 40 during a workweek; or (c) during the last six years had deductions made from their wages for damage to property in violation of Wis. Stat. §103.455.  Joinder is rendered even more impractical by the fact that former employees of the Defendants are widely scattered.

45.     There are questions of law and fact common to the Wisconsin Unpaid Wage Class (Rule 23 Class) that predominate over any questions solely affecting individual members of the class, including, but not limited to:

(a) Whether their time spent receiving work assignments, completing their morning vehicle inspections, warming up and building up the air pressure in their trucks, driving their company vehicles to the first worksite for the day, and waiting at the jobsite to be loaded are compensable under Wisconsin law;

(b) Whether their time spent driving their company vehicles from the final worksite to the vehicle storage location, completing post trip vehicle inspections, fueling their vehicles, and completing their paperwork are compensable under Wisconsin law;

(c) Whether the pay that they received for their return trips are additional compensation for their work performed for the Defendants' customers, rather than compensation for their drive from the final worksite to the vehicle storage location, and their work at the vehicle storage location;

(d) Whether there was a company policy of paying employees overtime pay for hours worked over 40 during the workweek, even when they either received or were eligible to receive interstate driving assignments, which the plaintiffs accepted by continuing to work for the Defendants;

(e) Whether under Wisconsin law the Defendants were required to pay the Plaintiffs an overtime premium for all hours worked over 40 during the workweek;

(f) Whether the Defendants violated Wis. Stat. §103.455 by deducting wages from the Plaintiffs to pay for losses caused by accidents that the Plaintiffs were involved in, without complying with the procedures required by Wis. Stat. §103.455;

(g) Whether it would violate Wisconsin public policy for the Defendants to require the Plaintiffs to sign written authorizations for wage deductions for damage to property, under threat of discharge, without giving the Plaintiffs any opportunity to demonstrate that they were not at fault for the damage; and whether any authorizations signed were therefore null and void;

(h) The proper measure of damages sustained by Named Plaintiff and members of the putative class.

46.     Named Plaintiffs' claims are typical of those of the Wisconsin Unpaid Wage Class.  Named Plaintiffs, like other Wisconsin Unpaid Wage Class members, was subject to Defendants' uniform policies of only paying the plaintiffs for their work time between when they begin performing their first work assignment; and when they complete their final work assignment; to not pay overtime pay for all hours worked over 40 hours per week; and to deduct

for accident-related losses from the Plaintiffs' wages without giving the Plaintiffs an opportunity to demonstrate that they were not at fault for the accidents.

47.     Named Plaintiffs will fairly and adequately protect the interests of the Wisconsin Unpaid Wage Class and has retained counsel experienced in complex wage and hour litigation.

48.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Defendant's common and uniform policies and practices denied the Wisconsin Unpaid Wage Class the wages for work performed to which they are entitled. The damages suffered by the individual Wisconsin Unpaid Wage Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's pay practices.

49.     Class certification of the First Claim for Relief is appropriate under Fed. R. Civ. P. 23(b)(3), because questions of law and fact common to the Wisconsin Unpaid Wage Class predominate over any questions affecting only individual members of the Wisconsin Unpaid Wage Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

50.     Named Plaintiff intends to send notice to all members of the Wisconsin Unpaid Wage Class to the extent permitted or required by Rule 23.

**Count I.        Overtime Pay Claim Under the Fair Labor Standards Act Against All Defendants.**

51.     Plaintiffs re-allege, and incorporate by reference, the allegations contained in paragraphs 1- 50 of the Complaint.

52.     The Plaintiffs' work of receiving their work assignments in the morning, building up the air pressure in and warming up the company vehicles, transporting their vehicles to the

first work location for the day (whether a loading site or a jobsite), and waiting at the loading or jobsite to perform their job responsibilities are indispensable parts of the performance of their principal activity, the performance of transportation and construction services using their company vehicles.

53.    The Plaintiffs were required to be in the cab of the truck while waiting at the loading site or jobsite to perform their job responsibilities; and therefore cannot effectively use the time for their own purposes.

54.    When the Defendants did require the Plaintiffs to arrive at one location to receive their work assignments, and to drive to a second location to pick up their work assignments; the plaintiffs' work days started when they started their work assignments, so that their drive time between the location where they received their work assignments and the location where they picked up their trucks is compensable pursuant to 29 C.F.R. §785.38.

55.    All of the time spent by the Plaintiffs driving between their last work location for a customer on the day and the storage location for the vehicles constitute a part of their day's work, pursuant to 29 C.F.R. §785.38, given that the Defendants assigned to the Plaintiffs the job duty of driving the vehicles back to the storage location chosen by, and for the benefit of the Defendants.

56.    All of the time spent by the Plaintiffs fueling, and performing inspection and maintenance duties on their vehicles at the end of their work days are indispensable to the performance of their principal activity, in that they could not perform their principal activity of performing transportation and construction services for the Defendants' customers without well maintained vehicles.

57.     The Defendants required the Plaintiffs to complete paperwork by the end of the day; and the paperwork was primarily for the Defendants' benefit in that it permitted them to track both the work performed, and the mileage travelled by the vehicles during the course of the workday.

58.     It may take the Plaintiffs 4 hours or more per day to complete the tasks outlined in paragraphs 20-24 of the Complaint, largely depending on the driving distance between the trucks storage location and their first and final worksites for the day, all of which constitute compensable work time under the FLSA.

59.     Each Plaintiff had workweeks during which they would be entitled to additional overtime pay, had the Defendants counted their activities described in paragraphs 20-24 of the Complaint as hours worked, and no drivers employed by the Defendant had an interstate driving assignment during either the preceding four months or the entirety of the Plaintiffs' duration of employment with the Defendants, whichever period is shorter.

60.     Additionally, upon information and belief during those same workweeks the Defendants failed to pay to the plaintiffs minimum wages required by law, once all of their hours worked as outlined in paragraphs 20-24 of the Complaint are taken into account.

61.     Defendants also failed to pay to the Plaintiffs overtime pay, equal to 1.5 times their regular rate, for each and every one of their hours worked in excess of 40 hours during the workweek, after excluding premium pay hours described by 29 U.S.C. §207(e)(5) – (7), in violation of 29 U.S.C. §207.

62.     Since Dan Lepke was ultimately responsible for supervising the work of the Plaintiffs; and was directly responsible for adopting the policies that resulted in the Defendants' failure to pay to the Plaintiffs all compensation required by the FLSA, Dan Lepke was the

Plaintiffs' employer within the meaning of 29 U.S.C. §203(d) when they worked for Lepke Trucking and Lepke Excavating; so that Dan Lepke should be held personally liable for FLSA damages that the Defendants owe to the Plaintiffs.

63.     Since the Defendants did not have any, let alone reasonable grounds for either believing that the plaintiffs' time spent performing the tasks outlined in paragraphs 20-24 need not be counted as hours worked under the FLSA, or for the payroll errors resulting in the plaintiffs not receiving overtime premium pay for some of their hours worked over 40 hours during the workweek, the plaintiffs are entitled to 100% liquidated damages for all compensation owed to them under the FLSA.  The Plaintiffs are also entitled to application of the three year statute of limitations for the Defendants' willful violations of the FLSA.

64.     The plaintiffs are additionally entitled to their reasonable attorneys fees and costs of bringing their FLSA claims against the defendants.

**Count II.       Claim for Straight Time and Overtime Pay Under Wis. Stat. Chapter 109 Against Lepke Trucking and Lepke Excavating.**

65.     Plaintiffs re-allege, and incorporate by reference, the allegations contained in paragraphs 1-64 of the Complaint.

66.     The DWD regulations defining hours worked under Wisconsin law are substantially similar to regulations defining hours worked under the FLSA; so that all of the Named Plaintiffs' time spent performing tasks outlined in paragraphs 20-24 of the Complaint are hours worked under Wisconsin law, for the reasons stated in Count I of the Complaint.

67.     Since the Defendants agreed to pay the Plaintiffs their regular hourly rate for each and every one of their hours worked, and under a full wage payment statute such as Wis. Stat. §109.03 the Defendants cannot borrow the wages paid for work performed during one hour to pay for work performed during a different hour, the Plaintiffs are entitled to hourly pay at their

regular hourly rate for each and every hour spent performing the tasks outlined in paragraphs 20-24 of the Complaint, which the Defendants to date has failed to pay.

68.     Wis. Stat. §109.03(1) requires the employer to pay to each of his employees all wages earned within 31 days after they are earned.  The Defendants therefore violated Wisconsin law by failing to pay to the Plaintiffs all straight time wages that they are entitled to.

69.     Pursuant to DWD §274.03, the Plaintiffs were entitled to overtime pay at 1.5 times their regular rate for all hours worked over 40 per week, unless their likelihood of receiving out-of-state driving assignments using their vehicles made them exempt from §274.03.

70.     However, even when the Plaintiffs were exempt from receiving overtime pay under DWD §274.03, the Defendants' contractual obligation to pay them for hours worked over 40 per week is enforceable under Wis. Stat. §109.03(1) and (5).

71.     All of the Plaintiffs would have received additional overtime pay from the Defendants had the Defendants counted their hours spent performing tasks outlined in paragraphs 20-24 of the Complaint as hours worked.

72.     The Defendants additionally violated DWD §274.03, and therefore Wis. Stat. §109.03(1) and (5), when it failed to pay to the Plaintiffs overtime pay for all of their hours worked over 40 hours for the workweek.

73.     Defendants additionally promised Plaintiff Connelly that he would receive $20 per hour, for each and every one of his hours worked for the Defendants.  Plaintiff Connelly accepted the promise, and a contract was formed, by continuing to perform work for the Defendants thereafter.

74.     Because the Defendants would alter Plaintiff Connelly's wage rate on his checkstubs, which were issued after the contract to pay Connelly $20 per hour for all hours

worked was formed, without either notifying Connelly or obtaining his consent, Connelly never agreed that the Defendants could reduce his wages to below $20 per hour.

75.    Additionally, because the Defendants never informed Plaintiff Connelly that he must accept the reduction of wages as a condition of his continued employment by the Defendants, and did not provide any other benefit to Connelly in return for the reduction of wages, even if Connelly did agree to the reduction of his wages, such a reduction is unenforceable for want of consideration.

76.    Defendants therefore violated Wis. Stat. §109.03(1) and (5) by paying Connelly wage rates lower than $20 per hour, after it had agreed with Connelly that he would receive $20 for all hours that he worked for the Defendants.

77.    Pursuant to Wis. Stat. §109.03(5), the Plaintiffs are entitled to maintain a lawsuit against Defendants Lepke Trucking and Lepke Excavating for all wages that they are entitled to receive pursuant to Wis. Stat. §109.03 and DWD Chapter 274.  In such a lawsuit they are also entitled to receive the 50% increased damages authorized by Wis. Stat. §109.11(2)(b), along with their reasonable attorneys fees and costs of prosecuting their claims as authorized by Wis. Stat. §109.03(6).

**Count III.       Wis. Stat. §103.455 claim Against Lepke Trucking and Lepke Holdings**

78.    Plaintiffs re-allege, and incorporate by reference, the allegations contained in paragraphs 1-77 of the complaint.

79.    Pursuant to Wis. Stat. §103.455, no wages may be deducted from employee paychecks for damage to property, unless the employee authorized the deduction in writing, a representative of the employee and the employer determined that the employee is at fault for the

damage to property, or there is a court finding that the employee is guilty or liable for the damage to property.

80.     Moreover, it violates a clearly stated Wisconsin public policy for an employer to condition an employee's employment on his agreement to sign an authorization agreeing to a wage deduction for damage to property, where the employee was never given an opportunity to demonstrate that he was not at fault for the damage at property.

81.     Whenever the Defendants did require the Plaintiffs to sign an authorization agreeing to a wage deduction for damage to property, the Plaintiffs' continued employment was conditioned on them signing the authorization, even though the Defendants would never discuss with the Plaintiffs whether they were at fault for the damage to property, and even though the signed authorizations did not contain any acknowledgement by the Plaintiffs that they were in fact at fault for the damage to property.

82.     The Defendants therefore violated clearly stated Wisconsin public policy by coercing the Plaintiffs into signing the authorizations under threat of discharge, so that any authorizations that the Plaintiffs did sign were unenforceable under Wisconsin law.

83.     Each and every deduction made by the Defendants from the paychecks of the Plaintiffs for damage to property therefore violated Wis. Stat. §103.455, unless the Defendants can demonstrate that a Court found the Plaintiffs to be guilty or liable for the damage to property.

84.     The Plaintiffs are entitled to double damages for each and every deduction that the Defendants made from their wages for damage to property, that was in violation of Wis. Stat. §103.455, regardless of whether they were in fact at fault for the damages to property.

WHEREFORE, the Plaintiffs respectfully request the Court to enter an order that:

1.      Finds that Defendants are jointly and severally liable to the plaintiffs for all unpaid overtime pay, 100% liquidated damages, and attorneys fees and costs arising out of the Plaintiffs' claims under the Fair Labor Standards Act;

2.      Finds that Lepke Trucking and Lepke Excavating are jointly and severally liable to the Plaintiffs for all unpaid straight time and overtime wages that they are owed under Wisconsin law;

3.      Finds that Lepke Trucking and Lepke Excavating are jointly and severally liable to the Plaintiffs for increased damages equal to 50% of the unpaid straight time and overtime wages that the Plaintiffs are owed under Wisconsin law, plus the Plaintiffs' attorneys fees and costs of prosecuting their Wisconsin law claims;

4.      Finds that Lepke Holdings and Lepke Trucking are jointly and severally liable for 200% of each and every deduction that they made from the Plaintiffs' wages in violation of Wis. Stat. §103.455;

5.      Grants to the Plaintiffs such other and further relief as the Court deems just and proper.

Dated this 21[th] day of May, 2015.

/s/Yingtao Ho_____
Yingtao Ho
yh@previant.com
Wis.  Bar #1045418
Attorney for Plaintiffs
The Previant Law Firm S.C.
1555 North RiverCenter Drive, Suite 202
P. O. Box 12993
Milwaukee, WI   53212
Telephone: 414-271-4500
Fax: 414/271-6308